Appeal from Fourth District.

WELSH, DRISCOLL & BUCK, *et al.,* v. BUCK.

No. 2914.  Decided November 24, 1916 (161 Pac. 455).

1. MORTGAGES—ABSOLUTE DEED AS MORTGAGE—DECLARATION OF TRUST—PAROL EVIDENCE.  While it may be shown by parol that an absolute conveyance was not intended to convey an indefeasible title, but that a mortgage was intended to secure an existing or contemplated indebtedness, where, long after deeds absolute in form were executed, the grantee made a written declaration of a naked trust for the benefit of the grantor and his heirs, it must be assumed that that was the real intention of the parties, and the grantee will hold title in trust to the use of the grantor or his heirs,[1] and it cannot be presumed that a mortgage was intended.  (Page 659.)

2. TRUSTS—PAROL EVIDENCE TO VARY.  If a declaration of trust in general terms in writing may be added to or varied by parol evidence, it should be permitted only upon the production of strong, clear, and convincing proof by the party who asserts that, although the declaration is couched in general terms, yet it was intended for a specific purpose, which is not mentioned. (Page 660.)

3. EQUITY—SCOPE OF RELIEF—CLAIMS AGAINST ESTATE OF DECEDENT—PROBATE COURT.  As claims against a decedent's estate may not be established in a court of equity, but must be presented in the probate court, when it was found that deeds were not given by a decedent to secure an indebtedness, and hence were not mortgages, the court properly dismissed the complaint without prejudice, without passing upon the claim asserted.  (Page 661.)

4. MORTGAGES—ABSOLUTE DEED AS MORTGAGE—ACTION—ANSWER—AFFIRMATIVE RELIEF.  In an action to have deeds declared mortgages, while defendants did not set up the facts upon which they based their prayer for affirmative relief in the form of counterclaim or cross-demand, but stated the necessary facts in their answer and prayed that title be quieted in them, and the findings of fact are sufficient to authorize such relief, the court erred in not entering a conclusion of law that defendants were entitled to the affirmative relief, and in not entering a decree in accordance therewith.  (Page 661.)

[1] *Distinguishing Duerdon* v. *Solomon,* 33 Utah 468, 94 Pac. 978, 980.

Appeal from District Court, Fourth District; Hon. *A. B. Morgan,* Judge.

Suit by Welsh, Driscoll & Buck, a corporation, and another against William J. Buck, as executor of the last will of W. J. Wilson, deceased, and another to have certain deeds declared mortgages, in which defendants answered, praying affirmative relief quieting title. From a judgment dismissing the complaint and denying affirmative relief to defendants, plaintiffs appeal, and defendants cross-appeal.

Judgment against plaintiffs, dismissing the complaint, affirmed, but case remanded, with directions to modify and enter a decree in accordance with defendant's prayer for affirmative relief.

*W. I. Snyder* for appellant.

*Evans, Evans & Folland* and *Walton & Walton* for respondents and cross-appellants.

## APPELLANT'S POINTS.

It was a principle well recognized under the old chancery practice and very early in England, that where one person advanced money for the benefit of another and had possession of property or indicia of property belonging to that other, that a lien in the nature of an equitable mortgage resulted, and might be asserted by the one holding the security and making the advancements, until the debt was paid.

These were called equitable mortgages and a familiar instance of the rule under consideration is where title deeds would be deposited as security. While we have no such thing in America, there are equitable conditions very closely resembling it, recognized by many authorities, and the very question under consideration of a deed, absolute on its face, being intended as a mortgage, resembles very closely by analogy the transaction of depositing the title deeds. 1 Jones on Mortgages, Sec. 162, 3; 3 Pom. Eq., Sec. 1266. This principle was recognized and the text writing of Mr. Jones up-

held in a Missouri case, where the language of the text was quoted and approved as follows:

" 'Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage. It is not even necessary that the contract should be in express terms a security; for equity will often imply this from the nature of the transaction between the parties.' " (*Hargardine* v. *Henderson*, 11 S. W. 221.)

So this court said in the case of *Duerdon* v. *Solomon, supra*:

"It is not contended that it was incompetent to show the real object of the deed by evidence *aliunde* the instrument. It is conceded that in cases such as this *courts of equity will look beyond the terms of the instrument to the real transactions*, and, when that is shown to be one of security and not of sale, they will give effect to the actual contract of the parties, and that the rule which excludes parol evidence to contradict or vary written instruments does not forbid an inquiry into the object of the parties in executing and receiving the instrument. The contention made is that a presumption arises that the instrument is what it purports on its face to be, an absolute conveyance of the land; that to overcome this presumption and to establish its character as a mortgage the evidence must be clear and convincing; and that the evidence was not sufficient to overcome this presumption, especially in that the evidence did not sufficiently show that any indebtedness existed between the plaintiff and the defendant. Whether the instrument should be treated as a deed or mortgage of course depends upon the facts and circumstances of the transaction, the object and purpose for which it was given and received, and whether it was given as security or for a bargain and sale of the land." (*Duerdon* v. *Solomon*, 23 Utah 472-3.)

One of the crucial tests usually applied by the courts in determining whether a deed, absolute on its face, is what it purports to be, or merely a mortgage, is the fact, always provable by parol, as to whether or not there was an existing indebtedness, or whether it was extinguished by the deed, or whether a credit was given on account for the deed; and it will be remembered that all these things are in favor of the appellants

in this case. (*Callahan* v. *Dunker*, 99 N. E. 1021, 4; *Miller* v. *Smith* (N. D.), 126 N. W. 499; *Harmon* v. *Grant's Pass, etc., Co.*, 118 Pac. 188; *Riley* v. *Starr* (Neb.), 67 N. W. 187; *Sadler* v. *Taylor* (W. Va.), 38 S. E. 583, 6, (Ct.) *Lawrence* v. *Dubois*, 16 W. Va. 443; Jones Mtg., Sec. 258, 325; *Anglin* v. *Conley* (Ky.), 71 S. W. 926; *Elliott* v. *Conner*, 58 So. 241; *Bank of Fairbanks* v. *Timmins*, 4 Alaska 242.) Unless the debt is extinguished, it is a mortgage *ipso facto*, however absolute the transaction. (*Harrison* v. *Hogue* (Tex.), 136 S. W. 118; *Phillips* v. *Jackson* (Mo.), 144 S. W. 112; *Ridings* v. *Bank* (Ia.), 125 N. W. 200.)

FRICK, J.

The plaintiffs, Welsh, Driscoll & Buck, a corporation, and Henry Welsh, brought this action in equity in the district court of Wasatch County against Wm. J. Buck, as executor of the last will of one W. J. Wilson, deceased, and against Medora Wilson Moline, who, at and prior to the death of said Wilson, was his wife. The plaintiffs sought to recover and prayed judgment for the sum of $8,983.90, which, it was alleged, said Wilson owed said corporation. They also prayed judgment that the court declare certain deeds executed by said deceased, during his lifetime, and one executed by both said deceased and his wife to the plaintiff, Henry Welsh, to be mortgages, notwithstanding that the same purported to be absolute deeds of conveyance of the interests of said Wilson in certain groups of mining claims, all of which are fully described in the complaint, and to foreclose said deeds as mortgages and to subject the interests so deeded by said Wilsons to the payment of the indebtedness alleged to be due to said corporation, and for general relief. The defendants, in their answer, admitted the ownership by the deceased of the alleged interests in said groups of mining claims, admitted the execution of the deeds set forth in the complaint, but averred that the same were not intended as mortgages; and that they were not intended nor given as security for the indebtedness set forth in the complaint, or for any indebtedness, and further averred that the title of the deceased to the interests in said mining claims were thereby conveyed to the

plaintiff Henry Welsh in trust merely; that he, as the grantee in said deeds, held all of the interests conveyed by said deeds in trust for the use and benefit of the estate of said Wilson, deceased. The answer also admitted that said Wilson was indebted to said corporation in some amount, but denied that such indebtedness amounted to the sum claimed by plaintiffs, and averred that the amount thereof was unknown to the defendants. The defendants further averred that:

"They are the owners of the full equitable title in and to the undivided interests in the claims described in plaintiffs' complaint, * * * that the plaintiffs wrongfully and unjustly claim title and interests therein adverse to these defendants, which claims are wholly without right, and that as to all said interests, as hereinabove alleged, the said plaintiffs held the legal title thereto in trust for these defendants, and not otherwise, and said trusts have never been repudiated by said plaintiffs, or either of them, or disavowed by them, prior to the bringing of this action."

The defendants prayed judgment that the complaint be dismissed, and that the defendants have judgment, quieting the title to said interests in said mining claims, and that plaintiffs be required to convey the legal title thereto to the defendants, and for general relief. Upon substantially the foregoing issues the District Court found that the deceased Wilson was the owner of the interests alleged in the several groups of mining claims; that the deeds conveying said interests were not intended as, and were not, mortgages, and that the same were not given nor intended as security for the indebtedness alleged in the complaint, or for any indebtedness; that "said Henry Welsh in respect of all of said conveyances was and is a mere trustee, holding the legal title so conveyed as trustee of the said W. J. Wilson and his estate." As conclusions of law the court found that "there is no equity in plaintiffs' amended complaint"; that said deeds are not mortgages, and plaintiffs are not entitled to foreclose the same as mortgages; that "said Henry Welsh holds the title to the said real estate so conveyed to him in trust merely to the use of the defendant Medora Wilson Moline and the estate of W. J. Wilson"; that the defendants are entitled to a judgment, "dismissing this

action upon the merits." Judgment dismissing the action was accordingly entered. The plaintiffs appeal from the judgment, and the defendants also prosecute a cross-appeal, and allege error upon the ground that the court did not give them the affirmative relief prayed for in the answer.

Plaintiffs' counsel, in his brief, states his contentions in the following words:

"The bone of contention in this case may therefore be virtually resolved into the single proposition as to whether these deeds, taken as a whole, were intended by the parties to be a mortgage securing the indebtedness of and advancements to Wilson, or whether, as claimed by the respondents, there was a mere naked trust, and absolutely no security for these large sums of indebtedness charged to the deceased."

Counsel then proceeds to a very interesting and exhaustive discussion and review of the authorities upon the question of when a conveyance, although absolute in form, will, nevertheless, as between grantor and grantee, be declared to be a mortgage and treated as such. Among the numerous other cases cited and relied on by counsel the case of *Duerdon* v. *Solomon*, 33 Utah 468 and 477, 94 Pac. 978, 980, is cited. In that case (33 Utah, page 472, 94 Pac., page 979) the doctrine is stated in the following language:

"It is not contended that it was incompetent to show the real object of the deed by evidence aliunde the instrument. It is conceded that in cases such as this courts of equity will look beyond the terms of the instrument to the real transaction, and, when that is shown to be one of security and not of sale, they will give effect to the actual contract of the parties, and that the rule which excludes parol evidence to contradict or vary written instruments does not forbid an inquiry into the object of the parties in executing and receiving the instrument. The contention made is that a presumption arises that the instrument is what it purports on its face to be, an absolute conveyance of the land; that to overcome this presumption and to establish its character as a mortgage the evidence must be clear and convincing; and that the evidence was not sufficient to overcome this presumption, especially in that the evidence did not sufficiently show that any indebtedness existed between the plaintiff and the defendant. Whether the instrument should be treated as a deed or mortgage of course depends upon the facts and circumstances of the transaction, the object and purpose for which it was

given and received, and whether it was given as security or for a bargain and sale of the land."

Counsel concedes that the doctrine is there correctly stated and applied. The case at bar, for reasons presently to be stated, is, however, clearly distinguishable from the case of *Duerdon* v. *Solomon, supra,* and the numerous other cases cited by counsel to which it is not necessary to more specifically refer here. In the case at bar both parties, that is, both the grantee in the deeds and those who were in privity with the grantor therein, claim that although the conveyances are absolute in form, they nevertheless were not intended to, and did not, convey an absolute and indefeasible title. The grantee, however, claims that they were intended as mortgages, that is, as conveyances given to secure certain indebtedness, while the representative of the deceased and his heirs contend that they were given as mere naked trusts, and that the grantee, Mr. Welsh, merely held the title in trust for the deceased, the grantor, and, after his death, for his estate and his heirs. If there was no other evidence execept the deeds themselves, there would be greater force to plaintiffs' contention that the indicia which are ordinarily held essential to constitute a deed absolute in form a mortgage are all present in this case. There is, however, also present other evidence, which, in our judgment, distinguishes and controls this case. The evidence is undisputed that after all of the deeds were given a declaration of trust in writing was made between the grantor and the grantee in the deeds, that is, between the deceased and Mr. Welsh. That was alone sufficient to prevent the plaintiff Welsh from claiming an indefeasible title to the interests conveyed in the deeds. It does not follow, however, that the declaration of trust constituted the deeds mortgages. Indeed, the language of the declaration of trust is general, and, giving it its natural, ordinarily and generally accepted meaning, it would make the grantee a mere naked trustee for the grantor or his heirs. Plaintiffs contend, however, that although the declaration of trust is general, that is, that the language of the parties imports a mere naked trust, in view of the facts and circumstances, it was, nevertheless, intended by the parties thereto that the

deeds are to be deemed mortgages, and that the interests conveyed should be held as security for certain debts or obligations of the deceased. No doubt as between a grantor and his grantee; in the absence of any written evidence to the contrary, the real transaction may always be shown by parol, and a deed absolute in form, in case of an existing or contemplated indebtedness, may, nevertheless, be shown to have been intended as a mortgage or security for the debt, and not as an absolute conveyance. In other words, it may be shown by parol that it was not intended to convey an indefeasible title, but that the title was held for security merely. In this case, however, the grantor and the grantee made a declaration of trust in writing long after the deeds in question were given. By that declaration the intention of the parties was clearly indicated, and at the same time swept away, or left no room for, a presumption that the conveyances were intended, either as mortgages or as absolute conveyances of the title. Had the parties then intended to have the deeds stand as security for the deceased's debts, it was quite as easy to have indicated that intention in a few words as it was to declare the same naked trusts, as was done. Having thus made an unconditional declaration of trust, it must be assumed that that was the real intention of the parties. Had the parties to the deeds remained silent after their execution, then there would be more force to plaintiff's contention; but in view that they indicated in writing what the original purpose of the deeds was, the force of plaintiffs' contention is thereby destroyed.

Assuming, without deciding, that in case of a written declaration of trust in which the purpose of the trust, if there be one other than the general terms of the declaration implies, was not stated, the grantee may, nevertheless, by parol evidence, show that the trust, although general in terms, was, nevertheless, intended for a specific purpose, yet the evidence produced by the plaintiffs in this case, in our judgment, is insufficient to establish such a purpose. To say the least, if a declaration of trust in writing, such as we have here, may be added to or varied by parol evidence (a question not presented, and hence not decided),

it should be permitted only upon the production of strong, clear and convincing proof by the party who asserts that, although the declaration is couched in general terms, yet it was intended for a specific purpose, which is not mentioned.. Without pausing to set forth the evidence, or even to state it in substance, it must suffice to say that, in our judgment, the plaintiffs have failed to produce evidence of that character, and hence a finding in their favor, if the court had so found, would not be supported by the evidence.

That disposes of plaintiffs' claims so far as a court of equity is concerned. Plaintiffs may not have recourse to a court of equity for the purpose of establishing their claims against the decedent's estate. To do that they must go into the Probate Court. Our probate courts are created for that purpose; and in view that we are forced to hold against plaintiffs' contention that the deeds in question were intended as mortgages, there remains nothing for us to do except to dismiss the complaint, without prejudice, however, to plaintiffs' right to establish their claim in a Probate Court, and, when so established, to subject the property of the estate to the payment of such claims. We express no opinion concerning the merits or demerits of plaintiffs' claims, nor upon their legal rights to establish the same according to law. All we now hold is that the District Court did not err in finding that the deeds in question were not shown to be mortgages, as contended by plaintiffs, and that therefore it did not err in entering judgment against the plaintiffs, dismissing their complaint.

This brings us to the defendants' cross-appeal. While the defendants did not set up the facts upon which they based their prayer for affirmative relief in the form of a counterclaim or cross-demand, yet they stated the necessary facts in their answer, and prayed that the title to the interests in the several groups of mining claims held by the deceased at the time of his death be quieted in the defendants. Moreover, the evidence and the court's findings of fact are sufficient to authorize such relief. Why, then, should the defendants be driven to another action? If they brought such an action, all they would be required to do would be to

allege and prove the findings and conclusions entered in this case. Upon that evidence they would be entitled to a conclusion of law and decree quieting their title. Why then refuse them relief in this action? Nor does such a decree, if entered, in any way hamper or interfere with plaintiffs' rights in establishing and enforcing their just claims in the Probate Court. The title of the mining claims would not be quieted in the defendants so as to prevent recourse against such claims for the debts of the deceased, when such debts are once legally established in the proper Probate Court. We are of the opinion, therefore, that the District Court erred in not entering a conclusion of law that the defendants are entitled to the affirmative relief prayed for by them, and in not entering a decree in accordance therewith.

For the reasons stated, the judgment against the plaintiffs, dismissing the complaint, is affirmed. The cause is, however, remanded to the District Court of Wasatch County, with directions to modify its conclusions of law and to enter a conclusion of law that the defendants are entitled to the affirmative relief prayed for in their answer, and that the court enter a decree upon such a conclusion, quieting the title to the interests in the mining claims, described in the complaint and in the court's findings, in the defendants in accordance with the prayer of the answer; defendants to recover costs on this appeal.

STRAUP, C. J., and McCARTY, J., concur.