ROSENTHYNE v. MATTHEWS-McCULLOCH CO. et al.

No. 3046.   Decided November 9, 1917.   (168 Pac. 957.)

1. CANCELLATION OF INSTRUMENTS—PREREQUISITES—MONEYS EXPENDED.   If defendant in suit to set aside a deed of land has paid out money for taxes and interest due on a mortgage on the land, he should be reimbursed therefor as a prerequisite to cancellation of the deed.   (Page 42.)

2. JUDGMENT—CONFORMITY WITH PLEADINGS.   Unless a judgment accords with and is warranted by the pleadings of the party in whose favor it is rendered, it is fatally defective.[1]   (Page 42.)

3. CANCELLATION OF INSTRUMENTS—RELIEF—PLACING PARTIES IN STATU QUO.   Ordinarily courts of equity before rescinding deeds, contracts, or other instruments, aim to place the parties to the transaction in statu quo.   (Page 43.)

---

[1] *Fillmore City* v. *Roller Mill Co.*, 36 Utah 339, 103 Pac. 967; *Florence Mfg. Co.* v. *Express Co.*, 36 Utah 346, 103 Pac. 966.

4. EQUITY—MAXIMS—RIGHT TO INVOKE. Where a wife showed that her husband without due authority from her made an exchange of properties and gave a deed of land which she sought to have canceled, the broker making the exchange, if he paid interest and taxes, was a volunteer in the transaction, and was not entitled to invoke the maxim that he who seeks equity must do equity. (Page 47.)

5. CANCELLATION OF INSTRUMENTS—ACTIONS—PARTIES. Such broker was not even a necessary party to the action. (Page 48.)

6. PLEADING—AMENDMENT AFTER TRIAL—WHEN PROPER. Where the wife sued to cancel a deed made by her husband making the purchasers and the broker parties, and the broker alleged that the purchasers had paid out sums for taxes and interest on a mortgage, while a judgment for a lien in favor of the broker for such sums could not be sustained, the pleadings could, even after trial, be amended to show the true facts that the broker paid such sums in order to support the judgment. (Page 49.)

7. APPEAL AND ERROR—ASSIGNMENT OF CROSS-ERRORS—SCOPE. Where the plaintiff appealed from only so much of the judgment as decreed a lien upon the land against her, the defendants merely assigning cross-errors thereon, the main judgment for cancellation of the deed could not be disturbed on the appeal in view of Comp. Laws 1907, section 3305, stating the requisites of taking an appeal.[2] (Page 49.)

GIDEON and McCARTY, JJ., dissenting.

Appeal from District Court, Second District; *Hon. J. A. Howell*, Judge.

Suit by Lovina W. Rosenthyne against the Matthews-McCulloch Company and others to cancel a deed.

Judgment canceling the deed, but adjudging defendant Company to have a lien upon the land. Plaintiff appeals.

*Reversed and remanded*, with directions.

*George Halverson* for appellant.

*Chez & Stine* for respondent.

Frick, C. J.

[2] *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff*, 49 Utah 569, 164 Pac. 856; *McCormick & Co.* v. *National Copper Bank*, 49 Utah 296, 163 Pac. 1097.

The plaintiff brought this action to cancel a deed of conveyance which she alleged was made without authority by her husband, who, in making the same, acted as her attorney in fact under a certain power of attorney. She prayed for relief as follows:

"That the deed hereinbefore described, and the record thereof, be declared fraudulent and void by this court, and that said deed be required to be delivered up for cancellation."

The plaintiff obtained judgment canceling the deed, but the district court also entered judgment against her and in favor of the Matthews-McCulloch Company, hereinafter called company. That company was given judgment against the plaintiff and granted a lien on the premises in question for moneys alleged to have been expended by the company for the alleged use and benefit of the plaintiff. Plaintiff's appeal is upon the judgment roll, and is only from that part of the judgment against her.

Plaintiff's counsel insists that the findings of the court in favor of said company and the conclusions of law and judgment based on said findings are erroneous, for the reason that they are not supported by the pleadings. The court's findings that are complained of here are as follows:

"That in pursuance of said exchange of property the said Matthews-McCulloch Company paid out for the use and benefit of the plaintiff the following sums:

On February 16, 1916, as interest on the hereinbefore mentioned $2,500 mortgage on said premises ............................................. $  20.85
On March 17, 1916, as interest on the hereinbefore mentioned mortgage on the said premises ..... ·50.00
At the time of said exchange, as interest on the hereinbefore mentioned mortgage on said premises ............................................. 127.75
At the time of said exchange, as taxes on aforesaid premises of said plaintiff ............... 50.16
On September 18, 1915, for fixing headgate in irrigation system on aforesaid premises of plaintiff ................................. 10.00
                                                        ─────────
    Total  ................................$258.76"

As conclusions of law the court found as follows:

"That the defendant Matthews-McCulloch Company is entitled to have judgment against the plaintiff, Lovina W. Rosenthyne, for the aforesaid sum of $258.76, advanced by the said Matthews-McCulloch Company for the use and benefit of said Lovina W. Rosenthyne as hereinbefore set forth; that said Matthews-McCulloch Company are entitled to a lien upon the hereinbefore described premises of the said Lovina W. Rosenthyne, and the said hereinbefore described premises of the said Lovina W. Rosenthyne be, and they are hereby, impressed with a lien in favor of the Matthews-McCulloch Company, for the aforesaid sum of $258.76, paid out and expended by the said Matthews-McCulloch Company on the said premises for the use and benefit of the aforesaid Lovina W. Rosenthyne, as hereinbefore set forth."

The court, in addition to entering judgment canceling the deed as before stated, also entered judgment establishing a lien on the premises in question in favor of said company for the reasons stated in the findings and conclusions of law. The only allegations in the answer of the company upon which the findings, conclusions of law, and judgment complained of could be based are the following:

"That by the terms of said trade the said codefendants Frank D. Smith and his wife, Rose Smith, actually assumed the mortgage incumbrance of $2,500 aforesaid, and in addition paid $405.40 in cash to discharge the taxes, which were over one year past due, and also discharge the interest, which was in default for two quarters, and other obligations and debts outstanding against said property."

In addition to what has been said it is only necessary to state the relationship of the parties and how that relationship arose, as those matters are disclosed by the pleadings. It is there made to appear that the plaintiff was the owner of certain real estate in Ogden City, and that she executed a power of attorney to her husband with respect thereto. Her husband, through the defendant company, entered into an agreement with the defendants Frank D. Smith and Rose Smith, his wife, whereby said company, with the consent of the plaintiff's hus-

band, exchanged her real estate for real estate owned by said
Frank D. Smith.   There was a mortgage for $2,500 on plain-
tiff's real estate which said Smith assumed and agreed to pay
as part of the consideration and as part of the difference in
value between plaintiff's premises and the premises of said
Smith.   There was some interest due on the said mortgage,
and the taxes were unpaid on plaintiff's premises, as appears
from that portion of the company's answer we have quoted.

The court construed the power of attorney, and found that
the husband of the plaintiff had exceeded his authority in ex-
changing the premises owned by the plaintiff for those owned
by said Smith, and hence the deed of conveyance made
by the husband by virtue of said power of attorney     1, 2
was, as against the plaintiff, held void.   As we have
seen, the court, however, also found that in making the ex-
change of premises the said company had advanced certain
money for the use and benefit of the plaintiff which she should
be required to repay the said company as a condition prece-
dent to canceling the deed aforesaid.   Plaintiff's counsel
however, insists that the court's findings, conclusions of law,
and judgment in that regard are, to say the least, erroneous,
for the reason that there is nothing in the pleadings to sup-
port said findings, conclusions of law, and judgment.   We
have carefully read the pleadings, and it must be conceded
that there is nothing contained therein upon which such find-
ings, conclusions of law, and judgment could legally be based.
We have set forth all of the allegations respecting the expendi-
ture of the money for the use of the plaintiff, and there is
nothing in those allegations authorizing any such findings,
conclusions of law, or judgment in favor of the company.
That the company had no such right must also have been the
theory of the pleader who drew the answer of the company,
since in the prayer no affirmative relief is asked for.   The
prayer is as follows:

"Wherefore these defendants, having answered plaintiff's
complaint, ask that plaintiff take nothing by this complaint,
and that these defendants have their costs."

If the company therefore had paid out any money for the use of the plaintiff, she in equity and good conscience, should repay as a condition precedent to having the deed set aside and canceled; and if the company was entitled to a lien on plaintiff's premises for the amount so paid out for her use and benefit, the facts in that regard should have been alleged, and the company should have prayed for such relief. Under our jurisprudence no court has the power to transcend the pleadings in granting relief, although the evidence may be abundant to sustain the findings and judgment; yet if the pleadings do not support them, the judgment cannot prevail. The law in that regard is correctly and tersely stated in 23 Cyc. 816, in the following words:

"A judgment must accord with and be warranted by the pleadings of the party in whose favor it is rendered; if it is not supported by the pleadings, it is fatally defective."

To the same effect are the rulings of this court in *Fillmore City* v. *Roller Mill Co.,* 36 Utah, 339, 103 Pac. 967; *Florence Mfg. Co.* v. *Express Co.,* 36 Utah, 346, 103 Pac. 966.

Counsel for the company, however, insist that the ruling of the district court, in so far as the plaintiff was required to repay the money expended for her use and benefit in making the exchange of the premises aforesaid, is right, and is based upon the fundamental principle that he who comes into a court of equity must do equity. Counsel contend, therefore, that the court was authorized to require the plaintiff to repay the company the amount it had expended for her benefit as a condition precedent to her right to have the deed canceled.

The difficulty with that contention, however, is that there is absolutely nothing in the pleadings showing that the company expended any money for the use and benefit of the plaintiff. It is quite true that ordinarily courts of equity, before rescinding deeds, contracts, or other instruments for 3 fraud or otherwise, always aim to place the parties to the transaction in statu quo, and will not permit one of them, whether innocent or not, to reap a benefit from the illegal transaction he would not have reaped if the transaction had not taken place, if such a result can be prevented. The

doctrine which controls in such cases is fully discussed in 9 C. J., commencing on page 1207, and continuing to page 1219. Numerous illustrations are given in the notes which show the application of the maxim.

The following excerpt from R. C. L. Section 341, p. 558, is also relied on, namely:

"A defendant is not, as a general rule, entitled to affirmative relief, unless he files a cross-bill. This rule is subject to exception in a case where the plaintiff is equitably bound to do equity as a condition precedent to the obtaining of equitable relief. In shaping its decree in such a case, the court has the power to protect the equitable rights of both parties, and if it sees fit to give affirmative relief to the defendant by enforcing an equitable claim in his behalf, it will do so."

Section 141, p. 392, same volume, is also cited.

The text quoted above is based on the following cases, namely: *Walden* v. *Bodley,* 14 Pet. (U. S.) 156, 10 L. Ed. 398, *Hubbard* v. *Tod,* 171 U. S. 474, 19 Sup. Ct. 14, 43 L. Ed. 246, and *Owings' Case,* 1 Bland (Md.) 370, 17 Am. Dec. 311. An examination of the foregoing cases will disclose that the decisions are in perfect harmony with what is said hereinabove. In the case cited from Maryland the question decided was whether affirmative relief could properly be granted to the defendant upon the bill of the plaintiff without the filing of a cross-bill by the defendant. The court, in passing on the question, after some discussion, in the course of the opinion, says:

"In such cases there can be no danger of surprise, or want of opportunity to adduce proof, because the indirect, inverted, or constructive decree is confined to that subject alone, which the parties themselves have by their pleadings spread before the court. Here the bill and answer disclose the whole matter in dispute, relative to the promise of the plaintiff, as fully as it could be done by a cross-bill. The defendant not only sets out and relies upon the promise of the plaintiff, but attempts to sustain the deed of the 15th of June, upon the ground of its being a mere fulfillment of that promise, thus representing the promise as the original contract. This allegation of the defendant has been put in issue as a material part of the subject in controversy, and, like every other part of the matter in issue, it may, without the unnecessary circuity and expense of a cross-bill, be met by such a decree as justice requires, either in favor of or against the plaintiff. *Harding* v. *Handy,*

11 Wheat. 120 [6 L. Ed. 429]; *Stuart* v. *Mechanics' & Farmers' Bank,* 19 Johns. [N. Y.] 505.''

The case of *Walden* v. *Bodley,* supra, is to the same effect, and language in effect like that quoted from the Maryland case is used in the opinion. The other case cited, namely, *Hubbard* v. *Tod,* is a proceeding in certiorari, and has no application to the principle now under discussion.

The case of *Farmers' Loan & T. Co.* v. *Denver, L. & G. R. R. Co.,* 126 Fed. 46, 60 C. C. A. 588, is, however, also relied on. It is sufficient to say that in that case the plaintiff commenced its action to foreclose a trust deed which was given on certain premises which, it was claimed, were covered by said trust deed and on a portion of which premises one Hutchison also held a trust deed to secure a certain indebtedness. The plaintiff, in its complaint, alleged that its trust deed was superior and paramount to the Hutchison trust deed, and prayed judgment that the court in which the action was commenced so find and declare. Mr. Justice Sanborn who writes the opinion, in his statement of facts, in referring to the issues, says:

''The defendant James R. Hutchison, who claimed under a trust deed upon these seven acres, dated February 1, 1894, hereafter termed the 'Hutchison mortgage,' made to secure a note for $50,000 signed by the railroad company and the Jefferson Investment Company, payable to him, *answered that his equity was superior to that of the trustee of the first mortgage.*'' (Italics ours.)

Upon those issues the trial court held that Hutchison had a superior equity to that of the plaintiff to a part of the $50,000 to secure which the Hutchison trust deed was given. The plaintiff appealed, and, among other things, contended that the trial court erred in awarding Hutchison affirmative relief because he had not filed a cross-bill in the action. It needs no argument to show that the pleadings and issues in that case are vastly different from those in the case at bar. There the plaintiff in its complaint alleged that its trust deed was superior to Hutchison's, and prayed judgment to that effect. Upon the other hand, Hutchison, in his answer, claimed that his trust deed was superior, and the court found and decreed

that to the extent of $21,049 his trust deed was superior. The plaintiff insisted that the court erred in allowing Hutchison anything, and Hutchison contended that it erred because it did not allow him $6,279.62 in excess of what was allowed. The appellate court reversed the judgment, and remanded the case to the trial court, with directions to amend its findings and decree by allowing Hutchison the additional $6,279.62 claimed by him as being superior to plaintiff's claim under its trust deed. The relief there granted, however, was not only based upon pleadings, but it is strictly in conformity thereto. In the case at bar the plaintiff prayed judgment that the deed which it was claimed was executed without authority be can-celed, and the defendant company made no claim whatever against the plaintiff in its answer. Indeed, whatever claim it made was in favor of its codefendant. The judgment in favor of the company is therefore not only not supported by any pleading, but it is in the very teeth of the allegations of the pleadings.

It therefore is not decided in the cases referred to that relief may be granted in any case without proper pleadings, but what is there decided is that, where the facts upon which the affirmative relief in favor of the defendant is based sufficiently appear in the pleadings, no particular form of pleading is necessary, and the relief may be granted on the pleadings as they stand. This court has affirmed that doctrine in the case of *Welsh, Driscoll & Buck* v. *Buck,* 48 Utah, 653, 161 Pac. 455, where we held that, where the facts are sufficiently stated in the answer, and the evidence is sufficient to justify a finding in favor of the defendant, affirmative relief may be granted to him, although ordinarily the matters more properly should have been set forth in a counterclaim. That, however, is not the question in this case. Here the party to whom the relief is granted does not even claim in its pleadings that it paid out or expended any money for the benefit of the plaintiff. What it in effect alleges is that some one else did so. Judgment is, however, awarded to the company for the identical money that it alleged some one else paid for the use and benefit of the plaintiff. Can it truthfully be said that under any system

of pleading a defendant may support a judgment in his favor against the plaintiff upon an allegation that some one else paid out money for the benefit of the plaintiff in the action? Moreover, may the court, upon such a pleading, create a lien on plaintiff's property in favor of the defendant without any allegation whatever to support such a judgment? That is precisely what the district court did in this case, and, in the judgment of the writer, no authority for such an act can be found under any system of jurisprudence where the pleadings must be in writing and where any judgment rendered must be based on the evidence which must conform to and follow the allegations contained in the pleadings. Nor does it appear in plaintiff's pleading that any money was paid out for her benefit on which a finding could be based.

So far we have assumed the case at bar to be one where the company, as a matter of right, may invoke the maxim that "he who seeks equity must do equity." In this connection it must not be overlooked that the company is a stranger to the contract which was the subject-matter of plaintiff's action and which was annulled by the district court's judgment. Whatever relief the company may obtain in this action, therefore, cannot be based upon any contractual relations existing between it and the plaintiff. She, as the court held, cannot be bound by anything her husband did regarding the exchange of her property, and hence the company is a mere volunteer in so far as the contract entered into by her husband with the Smiths is concerned. As pointed out in 10 R. C. L., Section 141, pp. 394, 395, the company cannot invoke the maxim in question as a matter of strict legal right. The rule is there tersely stated in the following words:

"Moreover, this maxim of equity jurisprudence applies only when the relief sought by plaintiff and the right demanded by defendant belong to or grow out of the same transaction. It has no application where the demand of the defendant is based on a contract separate and distinct from that which forms the subject of the plaintiff's action."

The company was not even a necessary party to this action so far as concerns plaintiff's right to have the deed made by her husband and the contract with defendants Frank D.

Smith and Rose Smith annulled. True, plaintiff made the company a party to the action, and in doing that she could not prevent it from setting up any claim it may have against her which relates to or grows out of the cause of action set up in her complaint. For the purpose of obtaining relief the company must however, set forth its claim in its pleading the same as other defendants would be required to do unless the claim sufficiently appears from plaintiff's pleading. The only exception when a party to an action need not in some form set forth his claim is when he can as a matter of right invoke the maxim that "he who seeks equity must do equity," and that the right to invoke that maxim sufficiently appears from the pleadings in the case. To that effect are the authorities. It is true that expressions are found in some of the cases, like those in the case of *Farmers' Loan & T. Co.* v. *Denver, L. & G. R. R. Co.*, supra, from which one might infer courts in certain cases grant relief without pleadings. When the cases in which such expressions are found are examined, however, it will be found that in all of them the pleadings contain the necessary allegations to support the relief therein granted. Such was the case in all of the cases referred to, and in none of them so far as the writer is aware, has relief been granted contrary to or without sufficient allegations in some of the pleadings which were filed in the action, although it is frequently held that under certain conditions particular forms of pleadings or prayers for relief are not necessary. In the case at bar the district court, however, not only made findings and entered judgment granting affirmative relief, but it also created a lien on plaintiff's property in favor of one who, without any authority from the plaintiff, paid money for her benefit, and without pleading, and without any prayer for relief, not even a prayer for general relief. The findings and judgment in favor of the company can therefore not be sustained, because: (1) It was not a party to the contract that was annulled by the court, but was a stranger to it, and is therefore not entitled to invoke the maxim aforesaid as a matter of strict legal right: (2) because nothing appears in plaintiff's complaint, or in any

other pleading in the case, on which such relief could be based; and (3) because it is averred in its own answer that its codefendants, the Smiths, paid out the money, and not that it had paid any or had any right thereto.

The findings and judgment are therefore not only not supported by the pleadings in the case, but they are directly contrary to the averments contained in the company's own pleading. If, however, the company paid out the money, as found by the court, there is no good reason why the whole matter may not be adjusted in this proceeding. That may, however, not legally or properly be done until the facts are made to appear in some pleading filed in the action. Under proper conditions pleadings may, however, be amended as well after as before the evidence is received. The findings and judgment must, however, be based on and find support in the pleadings, and unless the findings and judgment are thus supported they are erroneous and cannot be sustained. We are of the opinion, therefore, that if the evidence is sufficient (a matter concerning which we have no knowledge, since the appeal is on the judgment roll alone) to support the findings made by the district court, that court may permit the pleadings to be amended to conform to the evidence and make findings and enter judgment accordingly; and all that may be done without a new trial or rehearing of the case. It should, however, be done in the court of original jurisdiction and in which court the judgment must at all events be enforced.

The company, however, also assigns cross-errors in which it asserts that the district court erred in ruling that the power of attorney executed by the plaintiff in favor of her husband did not authorize the latter to trade or exchange her property for the property of the defendant Smith. As pointed out, however, plaintiff only appeals from that part of the judgment which was in favor of the company. That part of the judgment which was in her favor, therefore, was not appealed from by her, and in view that neither of the defendants appealed therefrom, that portion of the judgment was not brought up for review. In this jurisdiction it has repeatedly been held that, in case a judgment is divisible,

either party who feels himself aggrieved may appeal from the whole or any part thereof. To that effect is the statute (Comp. Laws, 1907, Section 3305), which in part provides:

"An appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered a notice stating the appeal from the same, *or some specific part thereof.*" (Italics ours.)

The plaintiff complied with the statute by specifically stating in the notice of appeal that she appealed only from that part of the judgment which was in favor of the company and against her. The company was thus notified that the plaintiff did not bring up the whole judgment for review, and if the company desired to have any other part of the judgment reviewed, it should have brought it up to this court by cross-appeal. While in this jurisdiction the respondent may for certain purposes, and within certain limitations, assign cross-errors, and thus review certain alleged errors without taking a cross-appeal, yet he may not, on such assignments, review matters not included in the appeal. The rule in that regard is stated in the headnote to the case of *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff,* 49 Utah, 569, 165 Pac. 856, in the following words:

"To modify an independent portion of the decree not touched by the appeal is not the office of mere cross-assignments, but the peculiar province of a cross-appeal."

To the same effect is *McCornick & Co.* v. *National Copper Bank,* 49 Utah, 296, 163 Pac. 1097.

In view, therefore, that the defendant's cross-assignments all relate to that portion of the judgment not appealed from, we are powerless to consider them.

The only question remaining is: what disposition should be made of this appeal? This being an equity case, we have the power to finally dispose of the case as well as of the appeal. We may, however, also remand the case with directions. In view of what has been said, however, if we now end the case, we might give the appellant an advantage to which she is not entitled by permitting her to escape from the payment of the

accrued interest on her mortgage and the taxes that were paid on her property. The payment of the interest and taxes, although voluntarily made, was nevertheless for the benefit of plaintiff's property, and in equity and good conscience she should be required to pay those to the company or to the person who paid them. In a court of equity the plaintiff should not be permitted to reap where she has not sown. For the purpose, therefore, of preserving and furthering justice between the parties, we have concluded to reverse the judgment and to remand the case to the district court for further proceedings. In view, however, that neither party has appealed from that part of the judgment canceling the deed, that part must remain intact and cannot now be assailed. The findings of fact, conclusions of law, and judgment in favor of the company are, however, reversed and set aside, and the case is remanded to the district court of Weber county, with directions to permit the parties to amend their pleadings, if they are so advised, to conform to the views herein expressed, and in case the pleadings are so amended, then, in addition to the evidence, which is already in the record, to hear such further and additional, proper and material, evidence as the parties, or either of them, may present respecting the payment of taxes, interest, etc., which the company claims to have made for the use and benefit of the plaintiff, and which affect her property, and make findings of fact and conclusions of law in favor of the company for the amount so expended and paid, and to enter judgment in its favor requiring the plaintiff to pay the same; and, in case she fails, refuses, or neglects to do so within a time fixed by the court, then to declare the amount a lien against the premises in question and order the same, or so much thereof as may be necessary, sold to pay the company's claim, and to apply the proceeds of such sale to pay said claim together with the costs incident to such sale; plaintiff to recover costs on this appeal.

CORFMAN and THURMAN, JJ., concur.

GIDEON, J. (dissenting).

The plaintiff, by her complaint, asked the aid of a court of equity to restore to her certain real property alleged to have been wrongfully conveyed to the defendant Frank D. Smith. In the prayer of her complaint she asked that the deed be delivered up and canceled, and that the record thereof be decreed fraudulent and void, for damages, costs, "and for such other and further relief as may be agreeable to equity." The court found that no fraud had been committed by either of the defendants, but that the power of attorney under which the deed to Smith had been executed did not authorize the conveyance made to him. The court further found that the defendant Matthews-McCulloch Company, after such conveyance had been made, expended in the payment of delinquent taxes on the premises and interest due on a mortgage existing thereon the sum of $258.76, and decreed, as a condition precedent, that the plaintiff should pay to said defendant that amount, and that the said amount should be a lien upon the premises until paid. From that part of the decree plaintiff appeals, and assigns as error that the findings and decree are not supported or justified by the pleadings, and by a majority of this court the case is reversed on that ground only.

In each of the separate answers of Smith and wife, the defendant J. A. McCulloch, and the Matthews-McCulloch Company, an allegation is contained that the defendant Smith had paid to defray and discharge taxes and interest, and other legal claims existing against plaintiff's property, the sum of $405.40. No affirmative relief was asked in the prayer of any one of such answers.

As I have indicated above, plaintiff is seeking the aid of a court of equity in asking to have her property returned to her. To entitle her to that relief she must do equity. This appeal is upon the judgment roll, and we must assume that the findings are supported by the evidence adduced at the trial. In fact, no contention is or can be, made to the contrary. In my opinion, the chancellor hearing this case was not only justified in the findings made, but he would have been derelict in his duty had he made any other findings and decree, if the facts warranted such findings. Let us suppose

the defendants had failed to plead to the complaint, and it had developed from the plaintiff's own testimony that such defendant had expended the amount found in paying the back taxes and past-due interest on the premises, would it not have been the duty of the court, under that state of facts, to have compelled plaintiff to do equity before granting her any relief? If not, what becomes of the maxim, "He who seeks equity must do equity?"

Plaintiff, in her complaint, seeks equitable relief, and the facts found entitle her to that relief whenever she restores to the defendant Matthews-McCulloch Company property that it had in good faith expended for her benefit. All of the parties were before the court, and all of the facts were before the court.

"Under the circumstances a court of equity will not be bound by the mistaken prayer of plaintiff's complaint, but will strike the balance and close the account." *Bader* v. *Johnson et al.,* 78 Wash. 350, 139 Pac. 33.

This is not a new doctrine in this court. As an illustration, if any one will examine the record of the case of *Ives* v. *Grange et al.,* 42 Utah, 608, 134 Pac. 619, it will be seen that this court, after setting aside the findings of the lower court, regardless of any allegations contained in the pleadings or of the relief sought in the prayer, proceeded to determine the equities among the parties, and directed the method by which the district court should protect the interests of each.

The principle that, in my opinion, should govern this case is stated in *Farmers' L. & T. Co.* v. *Denver, L. & G. Co.,* 126 Fed. 50, 60 C. C. A. 592, where, in discussing a like question, Judge Sanborn, speaking for the court, says:

"They say that this condition could not be imposed, and that the decree ought to be reversed, because Hutchison filed no cross-bill and prayed for no affirmative relief, while the decree directs that $21,049 and interest shall be paid to him out of the proceeds of the sale of the land. It is true that the general rule is that a cross-bill is indispensable to the grant of affirmative relief to a defendant in equity. But there is an exception to this rule, as well settled and uniformly applied as the rule itself. It is that no cross-bill is requisite to the application of the maxim that he who asks equity must do equity. It is that any relief, affirmative or otherwise, may be granted to a defendant which

the principle embodied in this maxim requires the court to impose upon
the complainant as a condition of granting all or a part of the relief
he seeks, regardless of the pleadings which present it''—citing numer-
ous authorities.

It is claimed, in the review of that case in the majority
opinion, that the facts there were different from the facts in
the case at bar, and that the rule stated in the above quota-
tion does not apply here. Suffice it to say that the noted jurist
in that excerpt from his opinion was stating general principles
of equitable procedure with especial reference to the maxim,
''He who seeks equity must do equity,'' regardless of the facts
in the particular case under consideration. Affirmative relief
was granted in that case notwithstanding no cross-bill had
been filed, and there was no prayer for affirmative relief. In
my judgment, that is the principle and the procedure adopted
by the judge who heard this case. Plaintiff was asking equity
at the hand of the court. In her efforts in that direction she
dragged the defendant Matthews-McCulloch Company into a
court of equity and charged said defendant with having been
a party to the recording of a false, fraudulent, and fictitious
deed affecting her property. The court found no fraud on
the part of the defendants, and only a mistaken judgment as
to the legal effect of a written power of attorney executed by
plaintiff herself, and that said defendant had in good faith
expended certain moneys to redeem plaintiff's property from
delinquent taxes and to pay past-due interest on a mortgage
she had given secured by the property in question. In the
face of that state of facts, as appears by the finding of the
lower court, this court now holds that the chancellor had no
power to enter the judgment he did, and that the cause must
be remanded for further proceedings. Additional expense
must necessarily be incurred, notwithstanding, from the facts
as they appear in the record and the findings of the court, it
is apparent that, when the case shall be redocketed in the dis-
trict court and the amendments suggested allowed, the ulti-
mate judgment must be the same as that rendered by the trial
court. It must be remembered that it is not contended that
any wrong or injustice has been done any of the parties by

the decree appealed from. Therefore, to remand the cause, in the light of the findings, for the reasons assigned, in my judgment, is substituting the shadow for the substance.

It is insisted that the defendant Matthews-McCulloch Company, cannot invoke the maxim, "He who seeks equity must do equity," for the reason that that company is a stranger to the injury complained of by plaintiff. That company was made a party to this suit by the plaintiff. In her complaint she charges that the defendants Matthews-McCulloch, J. A. McCulloch, and Smith wrongfully and unlawfully caused a certain false, fraudulent, and fictitious deed to be recorded in the office of the county recorder of Weber county purporting to convey her premises to the defendant Smith, and against all of these defendants sought damages and general relief. In view of such allegations on the part of the plaintiff it would seem to be apparent that the relief sought by plaintiff and the judgment granted to such defendant "belongs to or grows out of the same transaction."

Some criticism is made that the court should not have made the amount to be repaid Matthews-McCulloch Company a lien upon the plaintiff's premises. But how is plaintiff injured by that part of the judgment? The court was clothed with authority, in the application of the equitable doctrine of "He who seeks equity must do equity," to require plaintiff, as a condition precedent to granting her any relief, to repay to such defendant the moneys expended by it for her benefit. This the trial court did not do, but it restored to the plaintiff the title to her premises and subjected it in plaintiff's hands to a lien as security for the amount that said defendant had expended for her interest and the protection of her property. Plaintiff surely cannot be injured by that part of the court's decree in view of the court's findings. She has been given the title to her property. She is under no personal obligation to repay the defendant, and can make such disposition as she may desire of the premises subject to that lien.

For the reasons herein stated I dissent from the conclusions reached by the majority of the court. In my opinion, the judgment of the lower court should be affirmed.

McCARTY, J.

I concur in the reasoning of, and in the conclusion reached by, Mr. Justice GIDEON in the foregoing dissenting opinion.

The effect of the prevailing opinion, as I construe it, is to abridge the scope of the equitable powers heretofore exercised in this class of cases by the district courts of this state. In view of the far-reaching effect of the opinion in that regard, as I view it, I shall make a few observations in addition to those advanced by Mr. Justice GIDEON giving reasons why I think that part of the judgment appealed from should be affirmed.

The power of attorney under which the deed from Anthony Rosenthyne to the defendants Frank D. Smith and Rose Smith was executed, so far as material here, is as follows:

"Know all men by these presents that Lovina W. Rosenthyne has made, constituted, and appointed, and by these presents does make, constitute, and appoint, Anthony Rosenthyne her true and lawful attorney for her and in her name, place, and stead, and for her use and benefit, as to the following described tract of land only, * * * to bargain, contract, agree for, purchase, receive and take lands, tenements, hereditaments, and accept the seizing and possession of all lands, and all deeds of other assurances, in the law therefor, and to lease, let, demise, bargain, sell, remise, release, convey, mortgage, and hypothecate lands, tenements, and hereditaments upon such terms and conditions and under such covenants as he shall think fit, * * * and to make, do, and transact all and every kind of business of what nature or kind soever, and also for her and in her name, and as her act and deed, to sign, seal, execute, deliver, and acknowledge such deeds, covenants, indentures, * * * and such other instruments in writing of whatever kind and nature as may be necessary or proper in the premises, giving and granting unto her said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as she might do if personally present, hereby ratifying and confirming all that her said attorney, Anthony Rosen-

thyne, shall lawfully do or cause to be done by virtue of these presents.''

The power of attorney was duly signed and executed by the plaintiff, and recorded in the office of the county recorder of Weber County, Utah.

Plaintiff brought suit in equity against the Matthews-Mc-Culloch Company, J. A. McCulloch, and the Smiths to have the deed executed by her husband under the power of attorney ''delivered up and canceled.'' The defendants answered, and, evidently relying on the validity of the transactions had under and in pursuance of the power of attorney, which they were justified in doing, did not set up a counterclaim, and did not ask for an affirmative judgment against the plaintiff.

The trial court found that, ''pursuant to said power of attorney, said Anthony Rosenthyne   *   *   *   employed and authorized   *   *   *   Matthews-McCulloch Company to sell the aforesaid real estate,'' and that ''Matthews-McCulloch Company acting for the said Lovina W. Rosenthyne, exchanged the aforesaid real estate belonging to the said Lovina W. Rosenthyne'' for real estate belonging to said F. D. Smith and Rose Smith, the ''said Lovina W. Rosenthyne receiving in exchange therefor the following described premises:   [Describing them by metes and bounds].'' The court also found ''that, in pursuance of said exchange, the said Frank D. Smith paid to said Matthews-McCulloch Company the sum of $405.40 in cash, which said sum of $405.40 is the difference in valuation'' between the properties so exchanged, and that said sum was paid by said Frank D. Smith and Rose Smith as part consideration in exchange of the property to the said Matthews-McCulloch Company as agent of said plaintiff; that no part of said $405.40 has been paid to Frank D. Smith and Rose Smith.'' The court also found that Matthews-McCulloch Company, who transacted the business for the respective parties to the transaction, expended in payment of taxes, for necessary improvements made on the property and in payment of interest due on a mortgage held by a third party against the property described in the power of attorney, the sum of $258.76.

The foregoing findings of fact made by the court, considered

in connection with the power of attorney, not only reflect the
equities of the case, but they conclusively show that the equi-
ties are all with the defendants.   The power of attorney, in
plain   and   unmistakable   language,   expressly   authorizes
Anthony Rosenthyne ''to bargain, contract, agree for, pur-
chase, receive, and take lands, tenements, hereditaments'' for
the land described in the power of attorney ''upon such terms
and conditions and under such covenants as he shall think fit.''
Rosenthyne, by disposing of the real estate for other real
estate, did just what he was authorized and empowered to do
under the power of attorney.   *Ross* v. *Kenwood Inv. Co.,* 73
Wash. 131, 131 Pac. 649.   We therefore have a case in which
a party has come into a court of equity to have ''delivered up
and canceled'' a deed executed in pursuance of, and in accord-
ance with, the plain provisions of a power of attorney exe-
cuted by her to her husband.   In other words, plaintiff has
come into a court of equity to have set aside and canceled a
contract which the record shows was not in any respect
tainted with fraud or any other legal infirmity, but, on the
contrary, was, for aught that appears in the record, fair, just,
and legal.   The plaintiff, in that respect, to some extent at
least, came into a court of equity with ''unclean hands.''   The
trial court however, by holding that the sale or exchange of
her property for other real estate under and in pursuance of
the power of attorney was void, has given her a clean bill of
health in that regard; and since no appeal was taken from
that part of the decree, this court is powerless to correct the
error.   We may, however, for the purpose of determining
whether there is any equitable basis for the relief sought by
the plaintiff in this court, examine the entire record presented
by the appeal.

Plaintiff having come into a court of equity to obtain relief
to which she was neither legally nor equitably entitled, the
trial court not only had the power, but it was its duty, to
require her to do equity in the premises by paying into court
for the defendants the amount of money expended by them
in making the necessary improvements on the property, in the
payment of taxes levied against it and in payment of interest

due of the mortgage, and in case of her refusal or failure to make such payment then to impress the property with a lien in favor of defendants for the amount of money so paid out by them. Assuming, for the purpose of this appeal, which we must do, that the deed executed by Anthony Rosenthyne to the Smiths was void and that she was entitled to have it ''delivered up and canceled,'' she nevertheless, under the familiar principle of equity referred to by Mr. Justice GIDEON in the foregoing dissenting opinion, which rule is universally recognized and applied by courts of equity in this class of cases, that ''he who seeks equity must do equity,'' was required to refund the money paid out by defendants for her use and benefit. Mr. Pomeroy, in discussing the foregoing maxim, in his work on Equity Jurisprudence, vol. 1 (3d Ed.), in section 385 observes:

''It says, in effect, that the court will give the plaintiff the relief to which he is entitled only upon condition that he has given, or consents to give, the defendant such corresponding rights as he also may be entitled to in respect of the subject-matter of the suit.''

Again, in volume 6 (3d Ed.) section 688 (volume 2, Equitable Remedies), of the same work, the author, in discussing the subject of ''Cancellation'' of instruments, says:

''In order to obtain relief, the complainant must restore the other party to the condition in which he stood before the transaction. This requirement is based upon the maxim that he who seeks equity must do equity.''

In volume 7, section 219, Modern American Law, it is said:

''Whenever a suitor asks the aid of a court of equity, he must be prepared, as a condition to obtaining relief, to admit and secure to the other party all the latter's equitable claims involved in the subject-matter of the controversy. * * * A person suing to rescind or cancel a deed or contract because of fraud or mistake must return the consideration received and restore the other party to the situation in which he was before the transaction.''

In the case at bar none of the defendants were guilty of any fraud relating to the transaction out of which this controversy

arose, and no mistake, in a legal sense, except that created by the trial court in its misconception and misapplication of the law in construing the power of attorney was involved. I submit that, in view that the error of the trial court in that regard cannot be corrected, the foregoing principles of equity cannot be fully invoked and applied in this case and complete justice done all the parties in the action with respect to the money paid out by the defendants in the transactions referred to unless the judgment is affirmed.

Plaintiff, under these wholesome rules or principles of equity was required, as a condition precedent to the granting of the relief prayed for in the complaint, to do or offer to do equity. And that, too, regardless of whether the defendants interposed a counterclaim asking for an affirmative judgment against her.

As an illustration let us suppose that a parcel of real estate is sold for delinquent taxes, and, after the time for redemption has expired, the purchaser receives a deed for the land fully executed by the proper public official and takes possession of the property. In addition to paying the general taxes assessed against the property, the grantee named in the tax deed pays special taxes or assessments levied against it for public improvements, such as paving, sidewalks, and streets on which the property abuts, and also pays out money for necessary improvements on the property. The party owning the property at the time it was sold for taxes brings a suit in equity, after large expenditures of money have been made for the purposes suggested, to have the tax deed "delivered up and canceled" on the ground of some alleged infirmity in the tax levy, sale, or tax deed by which he was divested of his property. The party in possession, relying on the validity of his tax deed, does not interpose a counterclaim asking for an affirmative judgment against the plaintiff for the money expended by him in the payment of general taxes, special assessments, and for necessary improvements made on the property, but, relying on his title, pleads an estoppel, setting forth in detail the different items of expenditure made by him in the payment of taxes, etc. The court in its decision finds that the

tax deed is void, and also finds against the defendant on his plea of esoppel, but does find that the defendant made the cash expenditures mentioned, and that the plaintiff has received the full benefit thereof. In such cases the courts, in the exercise of their equitable powers, invariably require the plaintiff, as a condition precedent to granting the relief prayed for in the plaintiff's complaint, to do equity on his part, and that, too, regardless of whether the defendant has interposed a counterclaim asking for an affirmative judgment against the plaintiff.

The trial court having adjudged the deed from Rosenthyne to the Smiths to be void, the judgment rendered respecting the $405.40 paid by the Smiths to Matthews-McCulloch Company and the $258.76 paid by Matthews-McCulloch for the benefit of plaintiff's property is the only judgment that can be rendered under the circumstances and do complete justice to the defendants. In fact, the prevailing opinion, as I read it, in effect so holds. And the plaintiff is not in any respect prejudiced by it, because it is no concern of hers whether Matthews-McCulloch Company or the Smiths were paid the $258.76 that was expended for the benefit of her property. While the Smiths or Matthews-McCulloch Company might have some legal basis for assailing the judgment in that regard, the plaintiff has none, because, as stated, she cannot possibly be prejudiced by it, and the error, if there was error, was merely technical, and not prejudicial as to her. Under the prevailing opinion, as I read it, neither plaintiff nor defendant can possibly be benefited by a reversal of the case. It is manifest from the record that, when the case is reversed, and further proceedings had in accordance with the directions of, and in harmony with the suggestions made in, the prevailing opinion, a judgment identical with the one appealed from will be entered. Therefore the only effect a reversal of the case can possibly have is to prolong the litigation at the expense of the defendants. Plaintiff succeeded in misleading the trial court, and thereby obtained a judgment in her favor on the main or principal issue in the case, to which she was neither legally nor equitably entitled, and she ought not to be

permitted to prolong this vexatious and unconscionable litigation on her part at the expense of the defendants who have acted in good faith, and who, as the record—judgment roll—discloses, are guilty of neither moral nor legal wrong respecting the transactions out of which this controversy arose.

For the reasons stated in the opinion written by Mr. Justice GIDEON, and those herein set forth, I am clearly of the opinion that that part of the judgment appealed from should be affirmed.