## HESS v. ANGER et ux.

No. 3219.   Decided Nov. 21, 1919.   Rehearing Denied Jan 6, 1919.
(177 Pac. 232.)

1. MORTGAGES—DEEDS ABSOLUTE—EVIDENCE.  In an action to have
a deed absolute declared a mortgage and to have it foreclosed, both
parties admitting that the deed was a mortgage, evidence *held* to
sustain a finding that it was intended to secure expenditures that
might subsequently be made for the benefit of the property, as well
as debts paid at the time.   (Page 192.)

2. MORTGAGES—ABSOLUTE DEEDS—PAROL AGREEMENT.   A deed abso-
lute in form, executed, and delivered as security under a parol agree-
ment and with the understanding that it shall be so held, will be
construed as a mortgage.[1]   (Page 193.)

3. MORTGAGES—ABSOLUTE DEEDS—UNLIQUIDATED CLAIMS.   A deed,
when intended as a mortgage, may be given to secure an unliquidated
claim to whatever indebtedness may thereafter be contracted between
the parties under it.   (Page 193.)

4. LIMITATION OF ACTIONS—MORTGAGES—ABSOLUTE DEED.  Limitations
did not run to prevent the bringing of an action to have an absolute
deed declared to be a mortgage and foreclosed, where the plaintiff,
the 'grantee, in pursuance of the terms of the parol agreement and
under the deed, continued to pay and discharge the indebtedness
against defendant's property, pay the taxes thereon, and make ex-
penditures for its benefit up to the time of the commencement of the
action.   (Page 193.)

Appeal from the District Court of Box Elder County, First
District; *Hon. J. D. Call,* Judge.

Action by Henry G. Hess against Godfrey Anger and Anna
M. Anger, his wife.

Judgment for plaintiff.   Defendants appeal.

AFFIRMED.

*Henry Seeger* and *R. H. Jones* for appellants.

---

[1] *Duerden* v. *Solomon*, 33 Utah, 468, 95 P. 978.

*Wm. J. Lowe* for respondent.

CORFMAN, J.

This was an action brought in the district court of Box Elder County to have a deed absolute in form declared a mortgage, and the same foreclosed.

The material allegations of the complaint, in substance, are: That in 1904 the defendant Godfrey Anger had borrowed from the Utah Mortgage & Loan Company, of Logan, Utah, $2,170, and had given, as security therefor, a first mortgage lien on the premises involved in this action; that on January 17, 1917, the defendants procured additional loans aggregating $2,000 from the Ogden State Bank, for which they gave their promissory notes, signed by the plaintiff as a joint maker; that thereafter the Ogden State Bank refused to further deal with the defendants, or make them additional loans, unless some arrangement could be made whereby it might secure the first mortgage given to the Utah Mortgage & Loan Company, and in addition thereto it might deal directly with respect to the entire indebtedness of the defendants with the plaintiff Henry G. Hess; that thereupon, in pursuance of an understanding and agreement entered into between the defendants and the plaintiff, whereby the said premises were to be conveyed by deed from the defendants to the plaintiff so that the said bank might thereafter deal directly with plaintiff with respect to the indebtedness of the defendants, said bank took a second mortgage on said premises from the defendants to secure its said loan of $2,000, purchased and took an assignment of the first mortgage from the Utah Mortgage & Loan Company, and made the defendants an additional loan of $500, for which the defendants gave their promissory note, signed by the plaintiff as joint maker; that thereafter, in pursuance of the said agreement entered into between the plaintiff and defendants, whereby the said bank was to deal directly with the plaintiff as to said indebtedness and the plaintiff was to pay the interest thereon, taxes, liens, and other obligations necessary to be incurred in the benefiting of the said premises, and as security to the plaintiff for all

liabilities that might be incurred by the plaintiff in the transaction, the defendants, on November 13, 1918, by the deed in question, conveyed the premises involved, a 74.06-acre farm, to the plaintiff; that under right and authority conferred upon plaintiff by the defendants in conveying said premises to him, plaintiff has paid to the said bank all of the said loans made to defendants; aggregating $4,670, and in addition thereto, and in pursuance of said understanding and agreement between the plaintiff and defendants, between November 29, 1910, and April 1, 1917, was required to and did pay the interest on said mortgages, taxes against said property, claims for tiling of said premises, and other assessments thereon aggregating $3,391.21, which sum, with the accrued interest thereon at eight per cent. per annum, amounts to the sum of $4,150, that the said bank has assigned and transferred the said mortgages, together with all of the said indebtedness due and owing to it by the defendants, to the plaintiff, who is now the owner and holder thereof; that the plaintiff now brings said mortgages into court as settled and paid for by him, and surrenders the same and all debts secured thereby, and asks that they be canceled and discharged in full; that the defendants have not paid the plaintiff said sums, although demanded so to do, except that between November 2, 1914, and October 2, 1915, the defendants paid $699.36, on which they are entitled to interest at 8 per cent. per annum, making a total credit of $799.26.

Plaintiff prays judgment for the amount alleged to be due and owing from defendants; that the deed of conveyance to him be declared a mortgage, and for a decree of foreclosure.

The answer denies the alleged understanding and agreement between the plaintiff and defendants, pleads the statute of limitations in bar to the mortgage indebtedness, and by way of a counterclaim alleges the deed given by defendants to plaintiff was intended as a mortgage to secure the payment of the $500 loan only, and that in addition to the $792.26 admitted by the complaint as having been paid, the defendants have paid to the plaintiff additional sums, $100

by check and $400 by way of care and keeping of certain horses.

Defendants pray judgment against the plaintiff that the deed be adjudged and decreed a mortgage for the security of the $500 loan only; that it is paid, and that the deed be canceled and discharged of record, and that the mortgages and other evidence of debt held by plaintiff against the defendants be surrendered and discharged of record, and for general relief.

A reply was made by plaintiff, denying the affirmative allegations of the answer and pleading affirmatively that the care of the horses had been paid for by their use by defendants.

The district court, upon a trial, found the issues for the plaintiff, awarding him a judgment for $8,038.80, declared the deed to be a mortgage given to secure the indebtedness found due the plaintiff, and decreed a foreclosure thereof. Motion for new trial was made and denied.

There is no contention on this appeal but that the deed, absolute in form, made by the defendants to the plaintiff, was, in fact, intended as a mortgage; nor is there any contention that the trial court was not justified in treating it as such. The dispute arises only and solely as to the nature and extent of the indebtedness the deed was given to secure.

The plaintiff contends, and the trial court found, that the deed was made to the plaintiff with the intention, and in pursuance of an oral agreement between the parties that it should be taken and held by plaintiff as security for such sums as the plaintiff might pay in defendants' behalf in preventing foreclosure of the mortgages against and for the benefit of the premises conveyed to him. On the other hand, the defendants contend that the deed was given to secure the $500 item alone, and that this indebtedness had been fully paid by them. The defendants complain of the findings of the trial court, and insist that the same are not sustained by the evidence.

We have carefully reviewed the record, and the testimony, in brief, shows that the defendants are husband and wife, the latter a sister of the plaintiff; that before the marriage

of the defendants the defendant Godfrey Anger procured a loan of $2,170 from the Utah Mortgage & Loan Company, of Logan, Utah, and gave a first mortgage lien on the premises involved; that thereafter, January 17, 1917, the defendants procured additional loans, aggregating $2,000 from the Ogden State Bank, for which they gave their promissory note signed by the plaintiff as joint maker. These notes were thereafter secured by a second mortgage on the same premises. Subsequently, in the year 1908, a further loan of $500 was applied for and procured from the Ogden State Bank, for which the defendants gave their promissory note signed by the plaintiff as a joint maker. The foregoing facts disclosed by the evidence are not disputed.

The plaintiff testified that, after the $2,000 had been loaned by the Ogden State Bank to the defendants and a further loan of $500 was applied for, that bank demanded security, but refused to take a second mortgage on the defendants' premises or to further deal with defendants unless it could arrange to take up the first mortgage held by the Utah Mortgage & Loan Company, and thereafter deal directly with the plaintiff with respect to the indebtedness to the bank. The plaintiff further testified that it was at this juncture an understanding was had and an agreement entered into between the plaintiff and defendants that the premises should be conveyed to the plaintiff as security for the indebtedness of the defendants and all future sums that he might pay in benefiting defendants' property; that the deed was then made and given to him by the defendants; that thereafter he proceeded to pay the taxes on the property, the interest on the mortgage indebtedness, and also paid for certain tiling of the land while the defendants remained in the possession and had the use and enjoyment of the premises. Quoting the exact language of the plaintiff with respect to the giving of the deed by the defendants to him, he testified:

"When this thing came up with the bank, and they told me they were looking to me to have a deed, that I would be responsible for what had come up, and I told Mr. Anger what the bank told me, I told him that the bank did not want to do any business with him, they wanted to do busi-

ness with me. I told him to think it over whatever he wanted to do, that was the question, whether the mortgage should be foreclosed. * * * He stated to me he was satisfied, that I should go ahead. * * * He said he was willing to sign the deed, and the deed was signed, and I have been acting on that place just as if it was my own.''

The defendant Godfrey Anger testified:

''I went from Tremonton to Ogden prior to November, 1908, and met Mr. Hess there in Ogden, and had a talk with him. It was about a month before the date of this deed. I said to him I was running short of money on account of the crops did not turn out as good as they should, the extra expenses I had on account of sickness and doctors' fees, and all of that, so those I owed the bills they insisted on being paid, and it takes me about $500 more above my income to meet those expenses, and I ask him whether he could help me out in that. He told me that the next time he has a little time off he will go to the bank and see what he can do for me, that was the Ogden State Bank. I saw him later, and he told me, and he said, after he had a talk with Mr. Bigelow, he would let me know then, and I saw him again later, and he said he ought to have some writing in his hands, some kind of a paper, that would show that he was interested in my affairs, and they would help him to do better for me at the bank. There was a note made out after that at the bank for $500. I signed it. I think it was after the date of this deed, which is dated November 13, 1908, we signed this deed in Tremonton before a notary. I sent it to Mr. Hess through the mail, the same day that I acknowledged it. He did not say that he would record it at that time. I think the note was signed December 17, 1908. Mr. Hess' signature was on there. There was no other note, no, so this deed had reference to that $500 note. I intended or considered that deed to be nothing more than security for that $500 note; yes, sir.''

This witness also testified that the plaintiff did not tell him the bank did not want to do any more business with him at the time, or before, the deed was given, nor that he, the plaintiff, would be responsible for taking care of defend-

ants' indebtedness and the expenses that might thereafter be incurred in benefiting the property. Further, that since the deed was given he had paid to the plaintiff sums aggregating $799.36, and had fed and cared for horses belonging to plaintiff, which feed and care were of the reasonable value of $400.

In view of the testimony, all of which we have carefully reviewed, we cannot agree with the contention made by the defendants that the trial court's findings are not sustained by the evidence, and that the conclusions of law are erroneous. We are not unmindful that in this class of cases the oral testimony of witnesses should be scrutinized by the court with great care, and that the proof should be plain and convincing before the court is authorized to declare upon the intention of the parties. Counsel for defendants, in their brief and argument, have cited many cases and authorities to the effect that, when language is employed in a legal instrument, such as a deed, as in this case, it must be taken and construed as the real expression of intention of the parties. *Chambers* v. *Emery,* 13 Utah, .392, 45 Pac. 192; *Welsh, Driscoll & Buck* v. *Buck,* 48 Utah, 653, 161 Pac. 455; 1 Jones, Mortgages, section 252; *Howland* v. *Blake,* 97 U. S. 624, 24 L. Ed. 1027; *Snell* v. *Ins. Co.,* 98 U. S. 85, 25 L. Ed. 52; *Coal Co.* v. *Doran,* 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; *Ins. Co.* v. *Henderson,* 69 Fed. 762, 16 C. C. A. 390. In this case, however, neither party claims that the language of the deed is controlling. Both parties contend that the deed was not intended to be what it purports to be on its face. As pointed out, the plaintiff contends it was intended as a mortgage to secure the entire indebtedness of the defendants owing on their mortgages, the $500 note, and expenditures that might be made for the benefit of the property, while the defendants claim that it was given to secure the payment of their $500 only. In view of the relationship of the parties to the matters involved, and their conduct with respect thereto, both before and after the deed was given, as disclosed by the testimony, the plaintiff's contention appears entirely consistent. It would seem that the trial court could arrive at no other just conclusion

than that the deed was intended by both parties as a mortgage security for the demands made upon defendants in this action. It would be difficult to conceive of the plaintiff assuming to pay and discharge the heavy liabilities of the defendants under any other hypothesis than that the deed afforded him ample security for doing so.

In our state a deed absolute in form, executed and delivered as a security under a parol agreement, and with the understanding that it shall be so held, will be construed as a mortgage. *Duerden* v. *Solomon,* 33 Utah, 468, 94 Pac. 978. So, too, a deed, when intended as a mortgage, may be given to secure an unliquidated claim, or whatever indebtedness may thereafter be contemplated to be contracted between the parties under it and the same foreclosed in a court of equity, 27 Cyc. 1059; *Anglo-California Bank* v. *Cerf,* 147 Cal. 384; 81 Pac. 1081.

We find no merit in defendants' plea of the statute of limitations. The plaintiff, in pursuance of the terms of the parol agreement between the parties, and under the deed, continued to pay and discharge the indebtedness against the defendants' property, pay the taxes thereon, and make expenditures for its benefit right up to the time of the commencement of the action.

Finally, it is contended by the defendants that the judgment rendered by the district court is excessive. The court found, and we think correctly:

"That pursuant to said understanding and agreement made at the time of the conveyance of said property to the plaintiff, the plaintiff, between the 29th day of November, 1910, and the date hereof, was required to, and did, pay all interest on said mortgages, taxes against said property, claims for the tiling of said premises, and other assessments, and that the interest on said mortgages, together with the other claims, as aforesaid, amounts to the sum of $3,391.21, and that accrued interest on said sum so paid by plaintiff at the rate of 8 per cent. per annum from the time of payment to October 1, 1916, amounts to $759.18, which, with the principal sum, makes a total amount of indebtedness in the sum of $4,150,

besides the original indebtedness for which the defendant is responsible in the sum of $4,670.''

The court then rightfully concludes:

''That the plaintiff is entitled to a judgment against the defendants, and each of them, for the sum of $4,150, with interest thereon at the rate of 8 per cent. per annum from October 1, 1916, and for $4,670, with interest thereon at the rate of 8 per cent. per annum from April 1, 1917, and for costs of action, less a credit of $1,300, to which defendants are entitled.''

The court then awards judgment ''in the sum of $8,038.80, being the amounts of $4,150, and $4,670, with interest, less the sum of $1,300.'' The interest on the principal sum of $4,150 from October 1, 1916, to date of decree at eight per cent. per annum amounts to $332, and on the $4,670 from April 1, 1917, to date of the decree, to $186.80, in all $518.80, thus making the total sum due the plaintiff $9,338.80, less the $1,300 credit allowed the defendants on their counterclaim. Deducting the $1,300 from the $9,338.80 leaves a balance of $8,038.80, the actual amount for which judgment was rendered.

It is therefore ordered that the judgment of the district court be affirmed. Respondent to recover costs.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.