GENERAL MILLS, Inc., v. CRAGUN et al.

No. 6458.   Decided March 11, 1943.   (134 P. 2d 1089.)

*Devine, Howell & Stine* and *Neil R. Olmstead,* all of Ogden, for appellant.

*Christenson & Christenson,* of Provo, for respondents.

BRONSON, District Judge.

The District Court of Weber County sustained a demurrer to plaintiff's amended complaint with leave to amend. The plaintiff declined to plead further, and from judgment of dismissal plaintiff appeals. The only question for determination is whether or not the complaint states facts sufficient to constitute a cause of action.

Briefly, and in substance, the amended complaint alleges that plaintiff's assignor (Sperry Flour Company) entered into a written agreement with the defendants on May 13th, 1936, agreeing to advance defendants not to exceed $450 for the purchase of young turkeys and further to advance to defendants the feed required to feed said turkeys from May 13th, 1936, to Dec. 15th, 1936. That defendants agreed to pay the value of the feed delivered together with the $450 advanced on the purchase price of said turkeys. That to secure $3,750 of the indebtedness the defendants mortgaged the turkeys to plaintiff's assignor. That defendants agreed to deliver the turkeys to a marketing agency, Poultry Products, Inc., when marketable, and Poultry Products, Inc., were to deliver the proceeds of sale less commission, to Sperry Flour Company, to be applied by it upon the amount of indebtedness secured by the mortgage. The complaint further alleges in substance that *under said written agreement, and in pursuance to the promises of the defendants therein contained to pay therefore,* Sperry Flour Company sold and delivered additional feed to the amount

of $3,453.61, making a total indebtedness of $7,203.61 owing from defendants. That the turkeys were sold pursuant to the marketing agreement and Sperry Flour Company received $4,183.70 which it applied on the total indebtedness leaving a balance due of $3,019.91. A copy of the mortgage is attached as exhibit "A" to the complaint and by allegations in the complaint incorporated therein and made a part thereof. Exhibit "A" is the only instrument ever executed by the defendants and plaintiff's assignor.

We may assume that the allegations of the complaint would state a cause of action for the recovery of money upon a written instrument, had the agreement sued upon, Exhibit "A," not been incorporated in the complaint. The defendants contend that the agreement itself belies the allegations in the complaint, that the agreement on its face affirmatively discloses that plaintiffs are not entitled to recover thereon as they allege, or upon the written instrument at all, and the complaint, therefore, is vulnerable to a general demurrer.

The written instrument upon which plaintiff bases its right to recover insofar as pertinent is as follows:

Exhibit "A"

"Mortgage of Chattels

"This mortgage of chattels, made this 13th day of May, 1936, by and between Edumund Cragun and Ella M. Cragun, of the town of Pleasant Grove, County of Utah, State of Utah, by occupation turkey growers (hereinafter referred to as the Mortgagors), first parties and Sperry Flour Company, a Delaware Corporation, having its principal place of business in the City and County of San Francisco, State of California, engaged in the manufacture and sale of flour, feeds and cereals (hereinafter referred to as the Mortgagee), second party.

"Witnesseth

"First: The Mortgagors hereby mortgage to the Mortgagee all turkeys now or at any time from May 13, 1936 to Dec. 15, 1936, located on that certain real property situate, lying and being in or near the Town of Pleasant Grove, County of Utah, State of Utah, and particularly described as follows: (Description), together with all increase thereof and increment thereto, *as security for the perform-*

ance of all obligations of the Mortgagors herein contained or expressed.

"Third: Unless and until default is made by the Mortgagors in the performance of any of their obligations herein contained or expressed the Mortgagee agrees to cause to be delivered to the Mortgagors by a dealer or dealers to be designated in writing by the Mortgagee, all feed required by the Mortgagors from May 13, 1936, to Dec. 15, 1936, for feeding said turkeys grown or to be grown by the Mortgagors on the real property hereinabove described, at such dealer's retail list prices prevailing at time of delivery, f. o. b. Pleasant Grove, *not exceeding feed of the total price of* $3300.00, nor such quantity or value of feed as the Mortgagee may determine to be necessary to feed said turkeys from the date hereof to January 15, 1937, or such earlier date at which the mortgagors may propose to sell said turkeys.

"The Mortgagee further agrees to advance and lend to the Mortgagors a sum equal to one-half the total cost of the poults, which the Mortgagors may purchase not exceeding the sum of $450.00.

"Fourth: 1. The Mortgagors agree to pay to the Mortgagee at Ogden, Utah, on or before December 15, 1936, *the full price of all feed delivered,* by any such dealer or dealers designated in writing by the Mortgagee, to the Mortgagors, at such dealer's retail list prices prevailing at time of delivery, f. o. b. Pleasant Grove, together with interest on said price at the rate of 6% per annum, *together with all other sums now or hereafter due or owing from the Mortgagors to the Mortgagee; provided however, that the maximum amount, the payment of which is to be secured hereby,* is $3750.00.

"7. The Mortgagors hereby authorize any purchaser of any or all of said turkeys to pay the proceeds of the sale thereof to the Mortgagee, and the Mortgagors agree to execute hereafter, upon request by the Mortgagee, any other or further order or authorization which may be necessary or desirable in the judgment of the Mortgagee, to enable the Mortgagee to collect said proceeds. The Mortgagors further agree that all proceeds derived from the sale of said turkeys shall be used *exclusively in payment of obligations incurred hereunder* until all indebtedness secured hereby is paid in full. Upon receipt of such proceeds, the Mortgagee shall apply the same, or so much thereof as may be necessary, to the payment of all sums due the Mortgagee *hereunder,* and shall pay over the balance thereof to the Mortgagors or their order, and payment to or upon the order of either of the Mortgagors shall fully discharge the Mortgagee." (Italics added.)

The defendants contend that the foregoing instrument is limited in its legal effect by the limitation of $3,750, i. e. that there is no obligation provided for therein which is not secured by the instrument and that the advancements by

plaintiff's assignor thereunder and the repayments required of the defendants thereunder are all secured and are limited to $3,750. Further, that any claim plaintiff may have in excess thereof cannot be predicated upon the written instrument, that as the complaint only purports to declare upon the instrument and as defendants have already paid in excess of the secured amount of $3,750 the complaint does not, therefore, state a cause of action.

We understand plaintiff's contention to be that the instrument is: first, a chattel mortgage to secure the sum of $3,750 and in addition thereto an undertaking on the part of the defendants to pay all other sums that may be owing by reason of advances made for feed, namely $3,019.91 to be secured by a lien on the turkeys.

If the instrument involved is simply a chattel mortgage limited in amount to $3,750 secured by a lien upon the turkeys then the demurrer was properly sustained, as more than this amount has been paid by the defendants to the plaintiff's assignor in connection with the transaction. But if in addition to being a mortgage to secure a stipulated sum of $3,750 the instrument embraces an agreement between the parties whereby the defendants agree to pay the plaintiff all sums advanced by it for feed furnished then the court below erred in sustaining the demurrer. It would be difficult to understand why the trial court sustained a general demurrer in view of the character of the question presented, unless it be pointed out that plaintiff makes no claim that there is any extrinsic evidence that it could produce at the trial which might clarify and support the construction contended for by it and assigns no error in that regard.

The plaintiff contends the language in paragraph Fourth (7) supports its contention that defendants agreed therein to pay to plaintiff's assignor all sums of money due it in excess of the stipulated secured amount of $3,750.

Appellant argues that by paragraph Fourth (7) that the defendants: first, "authorized any purchaser of the turkeys to pay the proceeds to plaintiff's assignor; secondly,

they (the defendants) agreed that such proceeds shall be used exclusively in payment of the secured indebtedness until the same is paid in full; third, that after the secured indebtedness is paid in full the mortgagee might apply the remainder, or so much thereof as might be necessary in payment of obligations other than the secured indebtedness owing under the instrument; fourth, any balance then remaining to be delivered to the defendants." Our attention is directed to what the plaintiff claims are two distinct provisions for disposition of the proceeds by the mortgagee other than delivery of any remaining balance to defendants, and plaintiff says they are: first, to use the proceeds in settlement of the secured indebtedness; secondly, "to apply the proceeds to the payment of all sums due the mortgagee hereunder." It is claimed that if the agreement deals only with the secured indebtedness of $3,750 then there is no necessity for the second provision above referred to, that such a construction would render the second provision nugatory, a construction never to be indulged in when any meaning at all can be found therefor. It is claimed this second provision clearly indicates that the agreement was not dealing simply with the secured indebtedness of $3,750, but also with "all other sums" owing from the mortgagors to the mortgagee. We cannot agree with this construction. It is neither the only construction nor the most reasonable one in view of the language used, and a consideration of the instrument in its entirety. To say that the provision that all the proceeds of the sale of the turkeys or so much thereof as shall be necessary shall be applied "to the payment of all sums due the mortgagee *hereunder*" is an agreement by the defendants that they will pay any and all sums of money that may be owing to the mortgagee by them over and above the stipulated $3,750 secured by the instrument is unjustified. This provision does not say that the mortgagee may apply the proceeds of said sale to the payment of all sums due the mortgagee, but says that the mortgagee shall apply the proceeds of the sale or so much thereof as may be nec-

essary to the payment of all "sums due the mortgagee *hereunder*," i. e. *under the terms and conditions of the instrument in question.* The expression of "sums due *hereunder*" appears to be but a reference to the instrument as a whole, qualifying the balance of the statement and cannot be considered standing by itself as an engagement upon the part of the defendants to pay the mortgagee any money they might owe him over and above the amount secured by the mortgage, to wit, $3,750. It is simply an express statement, somewhat repetitious, of the duty of the mortgagee to make the application, to make it upon receipt of the proceeds of the sale and, with the balance of the paragraph, embraces the requirement to pay the balance to the mortgagors or their order. It was clearly contemplated that less than $3,750 might be advanced and it would seem the particular provision under discussion was drawn so as to take care of the situation where less than the maximum provided for was advanced by the mortgagee.

We must, therefore, determine if under the terms and conditions of the mortgage as a whole, outside of Paragraph Fourth (7), support for plaintiff's position can be found. The only language in the instrument upon which plaintiff seriously relies in support of its contention is found in Paragraph Fourth (1). So far as pertinent it is

"The mortgagors * * * agree to pay * * * the full price of all feed delivered * * * together with all sums now or hereafter due or owing from the mortgagors to the mortgagee; *provided however, that the maximum amount, the payment of which is secured hereby,* is $3750.00."

At this point it should be noted that in paragraph "Third" it was provided that plaintiff was not bound to deliver more than $3,300 worth of feed which with the initial advance totals the $3,750 above referred to—and was privileged to deliver feed in any lesser amount it saw fit. The language in paragraph Fourth (1) we are urged to construe as though

it was a promise to pay a stated secured amount of $3,750 and all other sums of money due and owing to the mortgagee. We do not think that it what the parties intended when the instrument was executed. It was, of course, not possible at that time to determine how much feed would be necessary to place the turkeys in marketable condition. We think the language that was used indicates that they contemplated less than $3,750 of indebtedness might accrue and such unliquidated amount whatever it might be was to be secured by the lien and paid by defendants, but the plaintiff's assignor did not intend at the time the mortgage was executed to make itself liable for advances in excess of $3,750. How can it be contended that defendants promised to pay more than the plaintiff's assignor agreed to advance?

It should be noted that the very first paragraph of the mortgage provides that the mortgage is given "as *security* for the performance of *all obligations* of the mortgagors *herein contained or expressed.*"

The plaintiff directing the court's attention to the subject matter of the contract points out that it was impossible to determine the exact amount of feed required to feed a given number of turkeys over an uncertain period of time and that it was, therefore, necessary to require the defendants to pay for feed furnished not only up to the stipulated mortgage limit but also for all feed over and above that amount that might be delivered. If it was necessary to make such a requirement of the defendants, it seems plaintiff's assignor could have done so by incorporating such obligation in the mortgage in the plain, cogent and unequivocal language in which it is now presented for argument. To have done so would have left no room for doubt as to the intention of the parties and this controversy would never have been presented to this court.

The fallacy in the argument, which plaintiff advances as an aid to construction, lies in the fact that the exigencies of the situation did not demand a contract drawn in the

form of exhibit "A" even though we placed thereon the construction plaintiff contends for. The mortgage could have been drawn to cover an unliquidated amount; to cover any amount that might be due and owing to the mortgagee by virtue of advancements up to the time of the sale of the turkeys, or to December 15, 1936, or to any other time. As stated in 41 C. J. p. 457:

"A mortgage may be given as security for an unliquidated claim, or for whatever sum may be due from the mortgagor to the mortgagee at a given time, or for all and every kind of indebtedness which may exist between the parties or be thereafter contracted, without any specification or limitation as to amount; and in such cases it may be enforced for whatever sum the holder of the mortgage may prove to be due and payable."

The mortgage involved is in fact for an unliquidated amount with a maximum of $3,750 fixed. This court has held a mortgage securing an unliquidated amount to be valid. *Hess* v. *Anger*, 53 Utah 186, 177 P. 232. See, also, *Hoye* v. *Buford*, 68 Ark. 256, 57 S. W. 795; *Magirl* v. *Magirl*, 89 Iowa 342, 56 N. W. 510. To have drawn the mortgage without a fixed limit, however, would have involved the mortgagee in a promise to advance the price of the feed in whatever amount was necessary even though it exceeded $3,300 and such an engagement the mortgagee at the time of the execution of the mortgage was apparently not willing to enter into. It might also be noted that defendants would be liable to the retail feed dealer or to the mortgagee on a quantum meruit basis for any feed furnished and not paid for in any event, and for all that appears of record, in this case, were so liable for the statutory period of limitations.

The mortgage in question we conclude was drawn by the mortgagee. Its entire format is that of the ordinary chattel mortgage. It is in printed form. The mortgagee's name is printed and blanks are left for the sake of prospective mortgagors. If it was the intention of the parties—if, perhaps we should say, it was the intention of the mortgagee, to whose principal benefit such an under-

taking would redound to have the mortgage operate as a written undertaking to pay any sums of money advanced over and above the stipulated secured amount it would have been simplicity itself to have said so in the agreement. It is so elementary that an ambiguity in a written instrument is construed more strongly against the party who drew the instrument that citation of authorities should be unnecessary. This is especially so where the one drafting the instrument has the advantage of a lender of money. What the parties might have done, and in the nature of things ordinarily would do if they sought to embody in the writing a certain intention, but failed to do, is of some assistance in determining what their intention was. In other words, what was left unsaid in this mortgage illuminates what was said therein. We are constrained to hold from a consideration of the language of the contract in its entirety, the contract res and the relation of the parties to each other, that the parties intended by their agreement to enter into a chattel mortgage to secure the sum of not to exceed $3,750 by a lien upon the turkeys in question and nothing more. As has been heretofore indicated the plaintiff has predicated its action entirely on the written instrument and has already realized in excess of the maximum obligation provided for therein and no cause of action having been alleged upon any other theory it follows that the lower court properly sustained the demurrer. Judgment affirmed. Cost to respondents.

WOLFE, C. J., and LARSON, McDONOUGH, and MOFFAT, JJ., concur.

PRATT, J., on leave of absence.